**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN J. BARRY** and | ) | |
| **BARRY LAW GROUP, P.C.**, | ) | |
| | ) | |
| Appellants, | ) | Case No. 15 C 9327 |
| | ) | (Appeal from U.S. Bankruptcy |
| v. | ) | Court Case No. 13 B 38329 |
| | ) | Adversary Proceeding No. 14 A 34) |
| **JOAN GALLONI**, | ) | |
| | ) | |
| Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

Debtor Kevin Barry ("Barry") has appealed from the October 9, 2015 ruling by

Bankruptcy Judge Janet Baer that held nondischargeable, in Barry's Chapter 7 bankruptcy

proceeding, his judgment indebtedness to Joan Galloni ("Galloni"). Because Judge Baer's

memorandum opinion ("Opinion") posed the prospect that the positions advanced by Barry in his

now defunct law firm Barry Law Group, P.C. are untenable as a matter of law, this Court

(1) ordered debtor Barry's counsel to file a brief in support of those positions and (2) set a status

hearing to be held promptly thereafter to consider what further proceedings might be called for.

Both of those things have now taken place, and Barry's contentions have indeed proved

bankrupt, both legally and morally.

Judge Baer's Opinion is both comprehensive and powerful -- so much so that a relatively

brief precis followed by an appropriate analysis, which may in material part refer to the Opinion,

will suffice to torpedo Barry's appeal. This memorandum opinion and order therefore proceeds

with the first of those tasks.

In early 2011 Barry, an Illinois lawyer who had concentrated his practice for well over 15 years on estate planning (including the preparation of more than 100 wills), probate and real estate matters was retained by senior citizen Josephine Wilke ("Wilke"). Barry drafted various estate planning documents for Wilke, including a will that at Wilke's direction designated Galloni (Wilke's first cousin) as executor of the will and as the residuary legatee (after payment of a few modest charitable bequests). In particular Wilke wished to cut her brother Frank Wilke ("Frank"), who would have inherited her estate if she were to die intestate, out of her will entirely (she had already made other provisions for Frank during her lifetime).

Barry adhered to those directions, but when it came to the execution of the will at the senior center where Wilke was in rehabilitation, he acted as the <u>only</u> witness to Wilke's signing of the will. Although Barry well knew the requirement of Illinois law as to the execution of a will and its attestation by <u>two</u> witnesses, when there was no second witness to Wilke's will Barry simply forged the signature of a second witness (in an astonishing understatement, he later claimed that was a "lapse of judgment" on his part). Then when Barry got back to his office he compounded that egregious impropriety by directing his secretary to notarize the signature page, and she did so (that notarization stated that the parties who signed the page had appeared before his secretary and were put under oath -- both of those statements were total falsehoods expressly solicited by Barry).

Barry cannot -- and indeed does not -- dispute that his gross misconduct violated his fiduciary responsibilities to <u>Wilke</u>. Instead he urged before Judge Baer, and he continues to urge before this Court, that he owed no fiduciary duty to <u>Galloni</u> until he had become her lawyer

promptly after Wilke's death.[1]  As Barry would have it, Galloni essentially lacks standing to

challenge his conduct that preceded the formation of the lawyer-client relationship that arose

when he took over as her lawyer in her purported capacity as executor of Wilke's estate -- an

executorship that proved to be an empty shell when Barry's misconduct later resulted in the

rejection of the will by the probate court (a rejection that took place in the early fall of 2011)

when, after Frank had challenged the will, Barry confessed his sins.

      To that end Barry seeks to distinguish two cases relied on in Judge Baer's Opinion --

Pelham v. Griesheimer, 92 Ill. 2d 13, 440 N.E.2d 96 (1982) and McLane v. Russell, 131 Ill. 2d

509, 546 N.E.2d 499 (1989) -- by contending that they do not satisfy the standard as Barry has

framed it in his Summary of Argument section at page 5 of his brief before this Court:

> Barry's representation of Wilke as her attorney did not result in a fiduciary duty to
> Galloni.  An attorney owes a fiduciary duty only to his client.  If an attorney's
> services to a client are intended to benefit a third party, the attorney may have a
> contractual duty, or a duty of care, to the nonclient third party beneficiary, but a
> breach of that duty leads only to a breach of contract claim, or a negligence claim
> in tort, not a claim for breach of fiduciary duty.

That position, which reflects a totally mistaken reliance on the tyranny of labels, misses the vital

point that in every situation in which the miscreant lawyer's responsibility to a third party such as

the intended principal beneficiary of a will exists, that responsibility creates a legally enforceable

duty -- as McLane, 131 Ill. 2d at 515, 546 N.E.2d at 502 (with references to Pelham abbreviated

by omitting its volume and page citations, and citations to other cases omitted) has explained and

has reconfirmed Pelham's holding in the very language that Barry's counsel actually (and

surprisingly) quoted at page 7 of his current brief:

_____
[1]  Wilke died nine days after Barry's appalling mishandling of the will's execution and
attestation.

> Typically, an attorney owes a professional obligation only to his client, not to nonclient third persons. In Pelham this court held that, under limited circumstances, a nonclient may maintain a negligence action against an attorney. Under Pelham, a nonclient may maintain a negligence action against an attorney only when the nonclient can show that he was the primary intended beneficiary of the attorney-client relationship. Pelham held that a nonclient-plaintiff seeking to recover in tort for legal malpractice must establish that the defendant-attorney owed him a duty of due care by showing that the primary purpose of the relationship between the defendant-attorney and the client was to benefit or influence the nonclient-plaintiff.

That last sentence might well have been written for this case.

As this opinion's earlier reference to "tyranny of labels" indicates, it matters not a whit whether state law may characterize a claim against a lawyer such as Barry as "negligence" or by some other pejorative term -- where as here lawyer Barry's misconduct clearly took the form of fraud, it cannot be gainsaid that the fiduciary obligation that Barry owed to his direct client (in this case Wilke) existed as well in his obligation to the "primary intended beneficiary of the attorney-client relationship" (in this case Galloni). In fact, much more recently the Illinois Supreme Court has squarely held exactly that in a case that is really on all fours with this opinion's statement of the controlling legal principle, DeLuna v. Burciaga, 223 Ill. 2d 49, 79, 857 N.E.2d 229, 247 (2006) (citations omitted and emphasis added):

> The key factor to be considered in determining whether a duty is owed to a third party is whether the attorney acted at the direction of, or on behalf of, the client for the benefit of the third party. . . .Under the circumstances, we hold that the requirement of Schwartz and Pelham is met, and [the lawyer] did indeed owe [the third party] a fiduciary duty.

Moreover, Barry continued the violation of his fiduciary obligations to Galloni after she became his direct client rather than the "primary intended beneficiary of the attorney-client relationship." In the first several months after Wilke's death Barry procured the will's admission to probate by remaining silent as to the will's known invalidity (both by not revealing his forgery

to either Galloni or the probate court and by assuring Galloni that there were no problems as to the will) -- he came clean only when his house of cards began to collapse around him after the filing of Frank's petition contesting the will, at which point Barry revealed his misconduct to the state court, to Frank's attorneys and to the ARDC.

At bottom, the controlling factor is that Barry owed ongoing fiduciary duties to Galloni throughout the period of his misconduct. It is scarcely an accident that the indebtedness owing from Barry to Galloni that Judge Baer found nondischargeable stems from the malpractice suit that Galloni filed in the state court promptly after Barry's revelation of his gross misconduct -- an action that produced a judgment on the pleadings in Galloni's favor. Again what Barry stubbornly refuses to recognize is that Galloni's recovery under the state law label of malpractice is not at all inconsistent with the concept of breach of a fiduciary duty -- indeed, exactly the contrary is true: Here those concepts coincide.

As for the other component required for a holding of nondischargeability during the course of a fiduciary relationship that sounds in 11 U.S.C. § 523(a)(4),[2] that subsection calls for "fraud or defalcation" to have been committed by the fiduciary in the course of that relationship. In this case there is no question as to the commission of fraud on Barry's part (his trial testimony during the adversary proceeding, in which he asserted that he did not advise Wilke or Galloni of the invalidity of the will "[m]ostly out of embarrassment" about his "mistake," is astonishingly feeble). All that Barry would have had to do to avoid all of the adverse consequences of Wilke's death that tragically occurred just nine days later would have been swiftly to provide another

_____
[2] All further references to Title 11's provisions will simply take the form "Section --," omitting the prefatory "11 U.S.C. §."

counterpart of the selfsame will and have it reexecuted during the next few days after he botched

the original will's execution. If that had been done his original fraud would not have eventuated

in brother Frank, rather than Wilke's intended residuary beneficiary Galloni, inheriting the entire

estate.[3]

Lastly, Judge Baer also held the judgment debt to be nondischargeable under Subsection

523(a)(6), which excludes from discharge any debt "for willful and malicious injury by the

debtor to another entity or to the property of another entity." Despite what has been said in the

last sentence of n.3, this opinion will go on to discuss that second alternative briefly, for it

provides another independent ground for the rejection of Barry's appeal.

On that score the opinion in First Weber Group, Inc. v. Horsfall, 738 F.3d 767, 774 (7th

Cir. 2013) teaches that the wrong perpetrated by Barry -- the injury that he caused to Galloni --

was both "willful" and "malicious," for that case confirms that "willfulness" can be found if "the

debtor's act was substantially certain to result in injury" (unquestionably the case here) and

reconfirms that "maliciousness" exists where "the debtor acted in conscious disregard of his

duties or without just cause or excuse" (internal quotation marks and brackets excluded) (also

unquestionably the case here). In short, this Court certainly concurs with Judge Baer's rejection

of Barry's weak contention of his mere negligence and embarrassment on his part, given his

deliberate affirmative misconduct in concealing what he had done.

_____
        [3] Although Judge Baer alternatively focused on the "defalcation" branch of Section
523(a)(4) at pages 15-16 of her Opinion, this Court does not find that term -- which is much like
embezzlement in calling for the wrongdoer to profit financially -- fits the facts of this case
comfortably. But there is no need to explore that subject here, for the alternative of "fraud" was
unquestionably present, and it is necessary to kill a snake only once.

## **Conclusion**

Analysis has demonstrated the emptiness of Barry's legal position.  This Court affirms the judgment of the Bankruptcy Court, and it too holds that Barry's judgment indebtedness to Galloni is nondischargeable in his Chapter 7 proceedings under both 11 U.S.C. §§ 523(a)(4) and 523(a)(6).

_____
Milton I. Shadur
Senior United States District Judge

Date:  January 19, 2016